NAVI DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

HARIKLIA KARIS (*pro hac vice forthcoming*)
hkaris@kirkland.com
ROBERT B. ELLIS (*pro hac vice forthcoming*)
rellis@kirkland.com
VANESSA BARSANTI (SBN 292103)
vanessa.barsanti@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Attorneys for Movant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY,<br><br>          Movant,<br><br>     v.<br><br>SETH JONES,<br><br>          Respondent. | CASE NO. **'23CV1905 AJB  AHG**<br><br>**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>Hearing Date:   TBD<br>Time:                TBD<br>Judge:               TBD<br>Time:                TBD<br><br>Underlying Litigation:<br>2:21-cv-00073-MCE-JDP<br>United States District Court<br>Eastern District of California |

**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

# **TABLE OF CONTENTS**

Page

**I.**     INTRODUCTION ................................................................................................. 1

**II.**    BACKGROUND ................................................................................................... 3

**III.**   ARGUMENT ......................................................................................................... 6

**IV.**    CONCLUSION ...................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akkawi v. Sadr*,
  2022 WL 4484056 (E.D. Cal. Sept. 27, 2022) ................................................................. 7, 8

*Amazing Ins., Inc. v. DiManno*,
  2020 WL 5440050 (E.D. Cal. Sept. 10, 2020) .................................................................... 7

*Bird v. Wells Fargo Bank*,
  2017 WL 1213425 (E.D. Cal. Mar. 31, 2017) .................................................................... 8

*Bofi Fed. Bank v. Erhart*,
  2016 WL 1644726 (S.D. Cal. Apr. 26, 2016) ..................................................................... 7

*Hall v. Marriott Int'l, Inc.*,
  2021 WL 1906464 (S.D. Cal. May 12, 2021) ..................................................................... 8

*HI.Q, Inc. v. ZeetoGroup, LLC*,
  2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) ................................................................... 3

*Moore v. Chase, Inc.*,
  2015 WL 4393031 (E.D. Cal. July 17, 2015) ..................................................................... 8

*In re Motion to Compel Leslie Westmoreland's Compliance with Non-Party
  Subpoena*,
  2022 WL 1478914 (E.D. Cal. April 7, 2022) .................................................................. 3, 6

*Pacific Bell Telephone Company v. Marine Taxonomic Services, Ltd.*
  Case No.: 23-cv-1747-DMS-KSC ...................................................................................... 3

*Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC*,
  2020 WL 4336296 (S.D. Cal. July 28, 2020) ...................................................................... 6

**Statutes**

42 U.S.C. § 6972(a)(1)(B) ........................................................................................................ 3

Health & Safety Code § 25249.5 ............................................................................................. 3

**Rules**

Federal Rule of Civil Procedure 45(d)(2)(B)(i) ....................................................................... 6

Pacific Bell Telephone Company (Pacific Bell) respectfully submits this Memorandum of Points and Authorities in support of its Motion for an order compelling Seth Jones to comply with a document subpoena, a copy of which is attached as Appendix A, and also as Exhibit A to the Dhillon Declaration.

## I.  INTRODUCTION

Pacific Bell moves this Court to enforce a subpoena seeking information directly relevant to a lawsuit filed by the California Sportfishing Protection Alliance (Plaintiff) in the Eastern District of California.  Plaintiff alleges that lead being released from telecom cables in Lake Tahoe caused adverse health and environmental impacts.  Pacific Bell strongly disputes those allegations.  Though not a party, the actions of Jones, as President, CEO, and Principal Consultant of Marine Taxonomic Services, Ltd. (MTS), sparked the underlying litigation.  Indeed, by Plaintiff's counsel's own admission, Jones and MTS "brought [the case] to us on a platter." Ex. D to the Declaration of Navi Singh Dhillon ("Dhillon Decl.").

In November 2021, the parties to the underlying lawsuit entered into a voluntary settlement providing for the removal of certain Lake Tahoe cables.  Pacific Bell agreed to remove the cables to avoid the costs and burdens of litigation.  After the settlement agreement was negotiated and reduced to a consent decree, but before the cables were removed, Jones—on behalf of MTS—entered into a contract with the Environmental Defense Fund to begin sampling and testing other lead-clad cables at sites across the country.  In July of 2023, the *Wall Street Journal* relied on MTS's testing for a series of articles about alleged health risks arising from lead-clad cables in Lake Tahoe and elsewhere.  Following the publication of the *Journal* articles, Pacific Bell exercised its contractual right to terminate the consent decree, which led to the reopening of the lawsuit.  Both parties to the underlying litigation have requested trial in 2024 and, just last week, the Court entered a scheduling order requiring that initial expert reports be exchanged in April 2024.  Karis Decl. Ex. A.  As a consequence, the bulk of discovery must be completed prior to that date.

On August 4, Pacific Bell issued a subpoena to Jones for documents, communications, and information related to his sampling and testing of lead-clad cables. See Appendix A, Dhillon Decl., Ex. A. Pacific Bell simultaneously issued a subpoena to MTS seeking similar information.

On August 15, Jones emailed counsel for Pacific Bell, asking for an extension of the deadline to respond to other subpoenas, including the subpoena served on MTS. Dhillon Decl., Ex. B. Counsel for Pacific Bell responded on August 16, agreeing to provide an extension if Jones would accept service of the subpoena directed to him, personally. *Id.* Jones responded on August 22, insisting on the extension but refusing to accept service of his personal subpoena. *Id.* Counsel for Pacific Bell even sent an electronic copy of the subpoena via email, but Jones again refused to accept service. *Id.* Jones subsequently avoided more than eight attempts at service from Pacific Bell process servers, prompting Pacific Bell to eventually file a request with the Eastern District of California Court to permit special service on Jones via email and overnight mail. Kelley Decl., Ex. A, ¶3.

After half a dozen additional attempts—and before the Court could rule on Pacific Bell's request for special service—Pacific Bell served Jones personally on September 6, 2023. Dhillon Decl., Ex. C. The compliance deadline passed over three weeks ago, on September 20, 2023, and, despite having actual knowledge of the subpoena since at least August 16, Jones failed to provide any substantive response. Even after the deadline passed, Pacific Bell made multiple efforts to confer in good faith with Jones to avoid motion practice, including a letter sent September 25 and emails sent October 12 and October 16. Kelley Decl., Exs. B-D, ¶7. Pacific Bell specifically requested that Jones confer not just in writing but in real time via videoconference. *Id.* Those repeated efforts to initiate a meet-and-confer were unsuccessful. As of this writing, Jones has not produced a single document. Dhillon Decl., ¶8; Kelley Decl., ¶14.

MTS, under Jones's direction, similarly failed to respond to the subpoena served

on it despite Pacific Bell's repeated efforts to confer in good faith after the compliance deadline passed. As a result, Pacific Bell was forced to file a motion to compel MTS' compliance with its subpoena in the Southern District of California, which is currently before Judge Crawford as *Pacific Bell Telephone Company v. Marine Taxonomic Services, Ltd*. Case No.: 23-cv-1747-DMS-KSC.

As explained more fully below, Pacific Bell respectfully requests that the Court grant this Motion. *See In re Motion to Compel Leslie Westmoreland's Compliance with Non-Party Subpoena*, 2022 WL 1478914, at *3 (E.D. Cal. April 7, 2022) (compelling compliance with non-party subpoena where "informal" efforts to secure compliance failed and the non-party had "delayed compliance at times without sufficient explanation"); *see also HI.Q, Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *15 (S.D. Cal. Nov. 29, 2022) (compelling compliance with non-party subpoena where non-party failed to properly respond).

## II.  BACKGROUND

This lawsuit arose from two submarine telecommunications cables located in Lake Tahoe. Plaintiff alleges that Pacific Bell is responsible for the cables, that lead is being released from the cables, and that the lead is adversely impacting the water quality of Lake Tahoe. Dhillon Decl., Ex. D.

Plaintiff asserts two claims against Pacific Bell. The first claim is for alleged violations of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B). *Id*. The second is for alleged violations of California's Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as "Prop. 65," Health & Safety Code § 25249.5, et seq. *Id*. As noted above, Pacific Bell strongly disputes these claims. Indeed, testing by two environmental consulting firms has confirmed that any detectable lead levels near the cables are consistent with background levels in Lake Tahoe. *See* Dhillon Decl., Ex. E.

Jones, President, CEO, and Principal Consultant of MTS, and Monique Rydel Fortner, Senior Scientist and Senior Project Manager at MTS, have played a central

role in this litigation from the beginning. Counsel for Plaintiff stated in a public interview that Jones "brought [the case] to us on a platter." Dhillon Decl., Ex. F. Specifically, Jones dove to the bottom of Lake Tahoe, cut "a foot of [a lead-clad cable] off, and took it all apart, and weighed the various components, and determined that every foot of that cable contained three pounds of lead." *Id*. at 2. Jones then brought the cable to counsel for Plaintiff, the cable was placed in a "kiddie swimming pool" for testing, and, in the words of Plaintiff's counsel, "we had the evidence that we needed to bring the case." *Id*. After bringing the case to Plaintiff, Jones and Fortner separately contacted Pacific Bell and lobbied for MTS to be awarded the contract to remove the cables—even going so far as to submit a formal bid in January of 2022.

Later, Jones and Fortner coordinated with the Environmental Defense Fund (EDF) to conduct lead-cable testing in six regions across the United States, including sites at Lake Tahoe. Ultimately, the *Wall Street Journal* also became involved, and the testing expanded to a number of other sites. Jones and Fortner prepared a 66-page Lead Cable Investigation Report for EDF documenting their lead-cable testing at numerous sites. *Id*., Ex. B. Both at Lake Tahoe and at other sites, the "sampling" performed by Jones and Fortner suffers from fundamental deficiencies, including severe sampling bias. Indeed, Jones and Fortner conceded that "[s]ampling locations were ***chosen*** in part by their likelihood ***to show high lead levels***." Karis Decl., Ex. B at 5 (emphasis added).

In July of 2023, the *Journal* published articles asserting that lead-clad cables in Lake Tahoe and elsewhere raise a public health concern. The articles prominently cite MTS, Jones and Fortner for their work on the very cables at issue in this case. Through MTS, Jones and Fortner "assisted the Journal in site visits, collecting the samples—sometimes through scuba diving—and tabulating the data," and "tested water samples from Lake Tahoe" for the *Journal* as recently as March 2023. Karis Decl., Ex. C at 5. One *Journal* article even has video footage of Fortner inspecting a cable in Lake Tahoe with the caption: "A diver with Marine Taxonomic Services marks damaged areas of a

Lake Tahoe cable in 2022." *Id.* MTS itself has been open and vocal about its longstanding role at Lake Tahoe and in working with the *Journal*, explaining on its LinkedIn page that its "work was critical" to the publication of the *Journal*'s articles on lead-clad cables, and that MTS had been working "tirelessly behind the scenes" for "18 months." *Id.*, Ex. D at 1.

Given Jones's prominent role in the underlying dispute, Pacific Bell issued a subpoena to him on August 4, 2023, asking him to produce, *inter alia*, all documents and communications related to sampling, testing, and analysis performed on lead-clad telecommunications cables at Lake Tahoe and elsewhere.

On August 15, 2023, Jones emailed counsel for Pacific Bell to request an extension related to a separate subpoena served on MTS. Dhillon Decl., Ex. B; Kelley Decl., ¶2. Counsel for Pacific Bell responded on August 16, agreeing to provide an extension if Jones would accept service of the subpoena directed to him, personally. Dhillon Decl., Ex. B. Jones responded on August 22, insisting on an extension for MTS but refusing to accept service of his personal subpoena. *Id.* And in an email sent on August 23, Jones "object[ed] to the requests in the [MTS] subpoena because they are burdensome, not related to litigation and violate my first amendment rights." *Id.*, at 1. Accordingly, counsel for Pacific Bell declined to grant the requested extension.

Jones dodged nearly a dozen attempts to serve him with his personal subpoena prior to finally being served on September 6, 2023. Kelley Decl., ¶5. The subpoena included a 14-day deadline for production, which made Jones's deadline to comply September 20, 2023. *Id.*, ¶6. After this deadline had passed, counsel for Pacific Bell sent Jones three separate meet-and-confer letters—all sent via email and via US Mail—in a sustained effort to resolve the disputes that are the subject of this Motion. *Id.*, Ex. B. First, counsel for Pacific Bell sent Mr. Jones a meet and confer letter on September 25, notifying him that he failed to respond to the subpoena and requesting a meet and confer. Kelley Decl., Ex. B, ¶8. The letter also notified Jones that Pacific Bell would file a motion to compel if Jones failed to respond or otherwise agree to meet and confer.

*Id.*  Next, counsel for Pacific Bell sent a letter on October 12, again requesting that Jones provide his availability to meet and confer and notifying Jones that that his failure to do so would result in a motion to compel.  *Id.*, Ex. C, ¶10.  Again, Jones failed to respond.  *Id.*, ¶11.  Finally, on October 16, counsel for Pacific Bell sent a final letter to Jones, requesting that he agree to meet and confer or Pacific Bell would have no choice but to file a motion to compel.  *Id.*, Ex. D, ¶12.  The letter stated: "Please let me know when you are available to meet and confer live, via video conference, concerning your compliance with the Subpoena."  Jones again failed to respond.  *Id.*, ¶13.  Pacific Bell has yet to receive a single document from Jones in response to the subpoena.  *Id.*; Kelley Decl., ¶14.

### III.   ARGUMENT

Federal Rule of Civil Procedure 45(d)(2)(B)(i) authorizes a "serving party" to, "[a]t any time," "move the court for the district where compliance is required for an order compelling production."  Jones resides in Solana Beach, California, and MTS is located in San Marcos, California—both in in the Southern District of California.  Where, as here, a non-party has "delayed compliance at times without sufficient explanation," and where "informal" efforts to secure compliance have failed, courts have compelled compliance with non-party subpoenas.  *See, e.g.*, *Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC*, 2020 WL 4336296, at *6 (S.D. Cal. July 28, 2020) (compelling compliance with a non-party subpoena where the non-parties "failed to respond to, comply with, or object to" the subpoenas, and they "failed to respond" to counsel's "efforts to arrange compliance"); *In re Motion to Compel Leslie Westmoreland's Compliance with Non-Party Subpoena*, 2022 WL 1478914, at *3 (E.D. Cal. April 7, 2022) (compelling compliance with non-party subpoena where "informal" efforts to secure compliance failed and the non-party had "delayed compliance at times without sufficient explanation").

Good cause exists for an order directing Jones to comply with the subpoena.  Jones dodged service for over a month after the subpoena was issued on August 4.

Counsel for Pacific Bell offered an extension to respond to the MTS subpoena in return for Jones's agreement to accept service of his personal subpoena, but Jones refused. Pacific Bell was finally able to effect service on September 6, and it has now been 27 days since the deadline for Jones's production passed on September 20. Even after the deadline passed, Counsel for Pacific Bell continued to seek Jones's compliance through informal means, including letters sent through email and via US Mail on September 25, October 12, and October 16. Kelley Decl., Exs. B-D. Jones has nonetheless refused to produce any documents or otherwise engage in the real-time meet and confer requested by counsel for Pacific Bell.

The brief and unsubstantiated objections Jones asserted via email on August 23 were not asserted to Jones's personal subpoena. This failure to respond, standing alone, establishes good cause to order production. But, even had Jones asserted them as to his personal subpoena, they cannot excuse his failure to comply with the subpoena. Jones merely stated that the requests in the MTS subpoena—which mirror those in the subpoena directed to him, personally—"are burdensome, not related to litigation and violate my first amendment rights." *Id.*, Ex. E. Even assuming for purposes of this motion that these vague statements were objections to Jones's personal subpoena (they are not), they cannot excuse his failure to produce the highly relevant information in his possession.

***First***, the generalized and boilerplate nature of the objections is tantamount to making no objection at all. *See Bofi Fed. Bank v. Erhart,* 2016 WL 1644726, at *4 (S.D. Cal. Apr. 26, 2016) (holding that boilerplate objections are "inadequate and tantamount to not making any objection at all") (internal citation omitted); *see also Amazing Ins., Inc. v. DiManno*, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *Akkawi v. Sadr*, 2022 WL 4484056, at *2 (E.D. Cal. Sept. 27, 2022) ("General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim.").

***Second***, any "burden" argument has been waived. *Moore v. Chase, Inc.*, 2015 WL 4393031, at *5 (E.D. Cal. July 17, 2015) ("Failure to serve timely objections waives all grounds for objection [to subpoenas duces tecum], including privilege."); *see also Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) ("[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure") (internal citation omitted). Jones's bare-bones objection to "burden" also fails where, as here, Jones has made no effort to detail or substantiate that burden: "When objecting on the basis that a discovery request is overly burdensome, the objecting party must affirmatively support its objection with compelling proof in the form evidentiary declarations or other evidence specifically describing the burden." *Bird v. Wells Fargo Bank*, 2017 WL 1213425, at *4 (E.D. Cal. Mar. 31, 2017). Jones did not do so. *See also Akkawi*, 2022 WL 4484056, at *2 (E.D. Cal. Sept. 27, 2022) ("If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections."). *Hall*, 2021 WL 1906464 at *5 (holding that "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections" and that "[a]rguments against discovery must be supported by 'specific examples and articulated reasoning'") (internal citations omitted).

***Third***, Jones has no First Amendment privilege to assert. Moreover, as with burden, Jones utterly failed to provide any justification for asserting any such objection or privilege.

***Fourth***, Jones provides no support for his objection that the requests are "not related to litigation." Nor could he. In the words of Plaintiff's counsel, Jones and MTS "brought [this case] to us on a platter." Dhillon Decl., Ex. F. Jones cut a foot of lead cable, brought the cable to counsel for Plaintiff, conducted testing, and, in the words of Plaintiff's counsel, "we had the evidence that we needed to bring the case." *Id*. Jones and MTS then expanded their sampling beyond Lake Tahoe, using the same flawed

methodology, and then publicized their testing in the *Wall Street Journal* articles that led to the reopening of this case.

### IV.  CONCLUSION

In light of Jones' refusal to confer despite Pacific Bell's repeated attempts, Pacific Bell asks the Court to grant this Motion and order compliance with the Subpoena.  Alternatively, Pacific Bell requests that the Court issue an order to show cause, requiring Jones to respond and show cause why the Court should not grant the relief sought herein.  Proposed orders have been submitted for the Court's consideration.

### LOCAL RULE 26.1(B) CERTIFICATION

Counsel for Pacific Bell attempted to meet and confer with Jones on multiple occasions, including via email on September 25, 2023, and October 12 and 16, 2023.  Pacific Bell requested a live video conference with Jones.  Notwithstanding these efforts, Jones refused to confer despite Pacific Bell's repeated attempts and notice that the instant Motion would be filed.

DATED:  October 18, 2023

Respectfully submitted,

KIRKLAND & ELLIS LLP
*/s/ Vanessa Barsanti*
Attorney for Movant Pacific Bell Telephone Company
Email: vanessa.barsanti@kirkland.com